1  Paul E. Burns (State Bar No. 208731)
   paul.burns@procopio.com
2  Melinda M. Morton (State Bar No. 209373)
   mindy.morton@procopio.com
3  Procopio, Cory, Hargreaves & Savitch LLP
   525 B Street, Suite 2200
4  San Diego, CA 92101-4469
   Tel:   (619) 238-1900
5  Fax:   (619) 235-0398

6
   Attorneys for Plaintiff
7  INNERLITE, INC. dba ISOLITE SYSTEMS

8

9                 UNITED STATES DISTRICT COURT

10        FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                      WESTERN DIVISION

12
   INNERLITE, INC. dba ISOLITE          Case No:  2:13 CV 07501 ODW (ASx)
13 SYSTEMS, a California corporation,
                                        **PLAINTIFF INNERLITE, INC. DBA
14                                      ISOLITE SYSTEMS' OPPOSITION
                Plaintiff,              TO DEFENDANTS BRIAN P.
15                                      BLACK, BRIAN P. BLACK, DDS,
                                        INC., AND JOOGATECH, INC.'S
16           v.                         MOTION TO DISMISS FIRST
                                        AMENDED COMPLAINT**
17 ZIRC DENTAL PRODUCTS, INC., a
18 Minnesota corporation, BRIAN P.      Date:    June 16, 2014
   BLACK, BRIAN P. BLACK, DDS,          Time:    1:30 p.m.
19 INC., a California corporation,      Judge:  Hon. Otis D. Wright II
   JOOGATECH, INC., a California        Ctrm.:   11
20 corporation.
21                                      Pretrial Conf.:  April 20, 2015
             Defendants.                Trial:        May 12, 2015
22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. III

INTRODUCTION ................................................................................ 1

SUMMARY OF RELEVANT FACTUAL ALLEGATIONS ................... 3

ARGUMENT ...................................................................................... 7

    I.     LEGAL STANDARD FOR RULE 12(b)(6) MOTION ...................... 7

    II.    THE D203 PATENT INFRINGEMENT CLAIM SHOULD NOT
            BE DISMISSED ............................................................... 8

         A.    A Patent Cannot Be Held Invalid On A Rule 12(b)(6)
              Motion.................................................................... 8

         B.    The Black Defendants Have Not Met The Requirements
              for Establishing Invalidity of the D203 Patent on Grounds
              of Functionality..................................................... 9

              1.    Requirements for Establishing Invalidity of a Design
                     Patent Based On Functionality ......................... 9

              2.    The Black Defendants Have Not and Cannot Meet
                     The Requirements Of Showing Invalidity of the
                     D203 Patent .................................................. 10

              3.    Courts May Factor Out Functional Features of A
                     Design Patent As Part Of Its Claim Construction Not
                     In A Motion to Dismiss ................................... 11

              4.    Cases Cited By The Black Defendants Refute Their
                     Position ........................................................ 12

    III.   THE BLACK DENTAL CORP. HAS NOT MET THE
            STANDARDS TO STRIKE ALLEGATIONS ................................. 16

    IV.   JOOGATECH'S CLAIMED STATUS AS A DISSOLVED
            CORPORATION DOES NOT IMMUNIZE IT FROM SUIT.......... 17

    V.    THE BLACK DEFENDANTS FAIL TO SHOW THAT
            PLAINTIFF'S CLAIMS FOR INDUCED INFRINGEMENT
            SHOULD BE DISMISSED ................................................ 18

         A.    The FAC Does Not "Negate" Inducement ................. 19

         B.    Plaintiff Properly Alleges Infringement in The Alternative..... 19

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C.      The Induced Infringement Claims Against Black and
Joogatech Should Not Be Dismissed for Failure to Plead
Knowledge of the Patents-in-Suit ............................................... 21

CONCLUSION .................................................................................................... 23

CERTIFICATE OF SERVICE ............................................................................. 25

ii

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*ADC Telecomms., Inc. v. Panduit Corp.*
200 F. Supp. 2d 1022 (D. Minn. 2002) ........................................................9, 10

*American Title Ins. Co. v. Lacelaw Corp.*
861 F. 2d 224 (9th Cir. 1988) ...........................................................................22

*Ashcroft v. Iqbal*
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .....................................7

*Bell Atl. Corp. v. Twombly*
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ..............................7, 20

*Berry Sterling Corp. v. Pescor Plastics, Inc.*
122 F.3d 1452 (Fed Cir. 1997) ("*Berry Sterling I*")...........................................14

*Berry Sterling Corp. v. Pescor Plastics, Inc.*
215 F.3d 1351, 1999 WL 674514 (Fed Cir. 1999)............................................13

*Cyr v. Offen & Co.*
501 F.2d 1145 (1st Cir. 1974) ..........................................................................18

*DSU Medical Corp. v. JMS Co., Ltd*
471 F.3d 1293 (Fed. Cir. 2006) ........................................................................19

*Egyptian Goddess, Inc. v. Swisa, Inc.*
543 F.3d 665 (Fed. Cir. 2008) (en banc) ....................................................11, 12

*Global –Tech Appliances, Inc. v. SEB S.A.*
131 S.Ct. 2060 (2011).......................................................................................22

*High Point Design LLC v. Buyers Direct, Inc.*
730 F.3d 1301 (Fed. Cir. 2013) ..................................................................passim

*Hupp v. Siroflex of Am., Inc.*
122 F.3d 1456 (Fed. Cir. 1997) ....................................................................9, 10

PLAINTIFF INNERLITE, INC. DBA ISOLITE SYSTEMS' OPPOSITION TO DEFENDANTS
BLACK, ET AL.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No: 2:13 CV 07501 ODW (ASx)

*In re Becton, Dickinson and Co.*
  675 F.3d 1368 (Fed Cir. 2012) ........................................................... 15

*In re Bill of Lading*
  681 F.3d 1323 (Fed. Cir. 2012) .......................................................... 20

*In re Rothery*
  143 F. 3d 546 (9th Cir. 1998) .............................................................. 7

*L.A. Gear v. Thom McAn Shoe Co.*
  988 F.2d 1117 (Fed. Cir. 1993) ........................................... 8, 9, 12, 13

*Lam, Inc. v. Johns-Manville Corp.*
  718 F. 2d 1056 (Fed. Cir. 1983) ........................................................ 17

*Lee v. City of L.A.*
  250 F.3d 668 (9th Cir.2001) ................................................................ 7

*McZeal v. Sprint Nextel Corp.*
  501 F.3d 1354 (Fed. Cir. 2007) .......................................................... 18

*Microsoft Corp. v. i4i Ltd. Partnership*
  131 S. Ct. 2238 (2011).......................................................................... 8

*MyMedicalRecords, Inc. v. Jardogs, LLC*
  2014 WL 585450 (C.D. Cal. Feb. 14, 2014) (*Wright, J.*) ..........passim

*Oddzon Prods., Inc. v. Just Toys, Inc.*
  122 F.3d 1396 (Fed. Cir. 1997) .......................................................... 11

*Pecorino v. Vutec Corp.*
  934 F.Supp.2d 422 (E.D.N.Y. 2012)................................................... 20

*Pegram v. Herdrich*
  530 US 211, 120 S.Ct. 2143 (2000) ................................................... 16

*PHG Techs., LLC v. St. John Cos.*
  469 F.3d 1361 (Fed. Cir. 2006) .......................................................... 10

*Porter v. Jones*
  319 F.3d 483 (9th Cir.2003) ................................................................. 7

*Richardson v. Stanley Works, Inc.*
  597 F.3d 1288 (Fed. Cir. 2010) ................................................... 12, 14

iv

*Rosco, Inc. v. Mirror Lite Co.*
   304 F.3d 1373 (Fed. Cir. 2002) ....................................................................9, 12

*Rubert-Torres v. Hospital San Pablo, Inc.*
   205 F.3d 472 (1st Cir. 2000) ...........................................................................7

*Service Solutions U.S., L.L.C. v. Autel U.S., Inc.*
   No. 13-10534, 2013 WL 5701063 (E.D.MI. Oct. 18, 2013)................21, 22, 23

*Spotless Enterprises, Inc. v. A & E Products Group L.P.*
   294 F.Supp.2d 322 (E.D.N.Y. 2003) ..........................................................14, 15

*Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.*
   491 F. Supp. 2d 871 (D. Minn. 2007) ......................................................8, 9, 10

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*
   532 U.S. 23, 121 S. Ct. 1259-60 (2001) ........................................................15

*United States v. Corinthian Colleges*
   655 F.3d 984 (9th Cir. 2011) ........................................................................22

*Z Produx, Inc. v. Make-up Art Cosmetics, Inc.*
   2013 WL 5941049 (C.D. Cal. Nov. 5, 2013) .................................................14

**CALIFORNIA CASES**

*Penasquitos, Inc. v. Superior Court*
   53 Cal.3d 1180 (1991) ..................................................................................17

**FEDERAL STATUTES, REGULATIONS, AND RULES**

15 U.S.C.
   § 1125(a)(3) ..................................................................................................15

35 U.S.C.
   § 271(a) ......................................................................................................1, 20
   § 282(a) ...........................................................................................................8
   § 282(b) ...........................................................................................................8

v

Federal Rules of Civil Procedure
    Rule 8 ................................................................................................... 20
    Rule 8(a)(2) ............................................................................................ 7
    Rule 8(d)(2) .......................................................................................... 20
    Rule 12(b)(6) ............................................................................... passim
    Rule 12(d) .............................................................................................. 7
    Rule 15(a) ............................................................................................ 22
    Rule 56 ............................................................................................. 7, 8
    Rule 56(d) .............................................................................................. 8

**CALIFORNIA STATUTES, REGULATIONS, AND RULES**

California Corporations Code
    § 2010 ................................................................................................. 17
    § 2010(a) ............................................................................................. 17
    § 2010(b) ............................................................................................. 17

**LOCAL STATUTES, REGULATIONS, AND RULES**

Local Rule 7-9 ........................................................................................ 1

**OTHER AUTHORITIES**

5-17 *Chisum on Patents*, § 17.04[a] ...................................................... 19

Kenneth A. Adams & Alan S. Kaye, *Revisiting the Ambiguity of "And" and
"Or" in Legal Drafting,* 8 S. John's L. Rev. 1167, 1192-92 (2007) ................ 20

PLAINTIFF INNERLITE, INC. DBA ISOLITE SYSTEMS' OPPOSITION TO DEFENDANTS
BLACK, ET AL.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Case No: 2:13 CV 07501 ODW (ASx)

Pursuant to Local Rule 7-9, Plaintiff Innerlite, Inc. dba Isolite Systems ("Isolite") respectfully submits its Opposition to Defendants Brian P. Black and Brian P. Black, DDS, Inc. and Joogatech, Inc.'s Motion to Dismiss First Amended Complaint (Dkt. #38) and the Memorandum of Points and Authorities in Support (the "Black Memo") as follows:

## INTRODUCTION

On October 9, 2014, Plaintiff Innerlite, Inc. dba Isolite Systems ("Isolite Systems") filed the original Complaint in this patent infringement action against Defendant Zirc Dental Products, Inc. ("Zirc").  Upon leave of court, Plaintiff Isolite Systems filed its First Amended Complaint on March 20, 2014 ("FAC") joining Defendants Brian P. Black ("Black"), Brian P. Black, DDS, Inc. ("Black Dental Corp."), and Joogatech, Inc. ("Joogatech") (collectively referred to as "the Black Defendants").  The FAC asserts infringement of U.S. Patent No. 8,297,973 ("the '973 patent") and U.S. Patent No. D615,203 ("the D203 patent") against the Black Defendants in the Third and Fourth Counts thereof, respectively, arising from (i) Defendant Black's and Black Dental Corporation's undisputed use of the accused Mr. Thirsty intra-oral dental device, and (ii) the Black Defendants' having enabled, facilitated and/or  participated in, Defendant Zirc's making, selling and/or offering to sell the accused Mr. Thirsty.

On May 13, 2014, the Black Defendants filed Defendants Brian P. Black and Brian P. Black, DDS, Inc. and Joogatech, Inc.'s Motion to Dismiss Amended Complaint pursuant to Fed. R. Civ.P. 12(b)(6) (hereinafter referred to as "the Black Motion").  The Black Motion acknowledges that the Third Count properly pleads a claim for direct infringement of the '973 patent pursuant to Section 271(a) against Black and the Black Dental Corporation.  *See* Black Motion at 1.  However, the Black Motion seeks dismissal of a portion of the Third Count and the entire Fourth Count on the following grounds:

1

PLAINTIFF INNERLITE, INC. DBA ISOLITE SYSTEMS' OPPOSITION TO DEFENDANTS
BLACK, ET AL.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
DOCS 1970797.1                                                              Case No:  2:13 CV 07501 ODW (ASx)

1. the FAC fails to properly plead inducement of infringement of the '973 patent against Defendants Black and Joogatech;

2. the FAC does not properly plead direct infringement against Joogatech, Inc. and Joogatech should be dismissed out of the case because it had dissolved prior to the filing of the FAC; and

3. the Court should dismiss the Fourth Count in its entirety because the D203 patent is invalid.

*See* Black Motion at 1.

As explained in detail below, it is improper for the Black Defendants to request dismissal of a patent on grounds of invalidity in a Rule 12(b)(6) motion because (i) invalidity must be pled as an affirmative defense, (ii) the burden of proof is on the Black Defendants to prove invalidity by clear and convincing evidence, (iii) invalidity is a question of fact, and (iv) in view of the absence of any supporting authority cited in the Black Memo, it appears that no court has ever ruled a patent to be invalid on a Rule 12(b)(6) motion as such would be clear error. Accordingly, Plaintiff Isolite Systems respectfully submits that the Black Motion's request to dismiss the Fourth Count in its entirety on grounds of the invalidity of the D203 patent should be summarily denied.

As further explained below, the Court should deny the Black Motion, or in the alternative, give Plaintiff Isolite Systems the opportunity to amend in view of the following:

1. the FAC already contains substantial factual allegations supporting a claim of inducement of infringement against Defendant Black and/or Joogatech;

2. Defendant Black judicially admitted to knowledge as of the filing of the original complaint, and as such knowledge pre-dates the FAC, Plaintiff has sufficiently pled inducement of infringement and should be allowed to prove its case through discovery and trial; and

2

3.  even if the Court finds that Plaintiff has not sufficiently alleged inducement of infringement, leave to amend is liberally granted.

## **SUMMARY OF RELEVANT FACTUAL ALLEGATIONS**

Contrary to the Black Memo's unsupported factual assertions that (i) "This case is not really about Dr. Black," and (ii) "Dr. Black does not make or sell the Mr. Thirsty device, he never has, and he never had any rights to do so," *see* Black Memo at 1, the FAC sets forth comprehensive factual allegations showing that Defendant Black engaged in conduct that directly resulted in infringement of Plaintiff Isolite Systems' '973 patent and D203 patent.   These FAC allegations are summarized below.

The FAC alleges that Plaintiff Isolite Systems is a family-owned company founded in or around 2001 by brothers James A. Hirsch and Dr. Thomas R. Hirsch (collectively sometimes referred to herein as "the Hirsch Brothers") in Santa Barbara, California.  FAC, ¶11.  In or around 1998, The Hirsch Brothers invented a revolutionary new dental device intended for use by dental professionals (i) to isolate the work area in a patient's mouth, (ii) to retract the tongue and cheek, (iii) to evacuate fluids and oral debris, and (iv) to prevent inadvertent aspiration of material. This device is hereinafter sometimes referred to as "the Isolite Product".  FAC, ¶12. For approximately ten years, Plaintiff Isolite Systems has manufactured, distributed and sold a model of the Isolite Product currently known as "the Isolite Dryfield illuminator system," that includes an internal LED light source that provides illumination throughout the oral cavity and is sold under the federally registered trademark "ISOLITE".   FAC, ¶14.   Since 2010, Plaintiff Isolite Systems has manufactured, distributed and sold a model of the Isolite Product without the LED light source under the federally registered trademark "ISODRY", and is intended for use by dental professionals who prefer to work with external lighting.  FAC, ¶15.

Purportedly in his capacity as a member of the faculty of Loma Linda School

PLAINTIFF INNERLITE, INC. DBA ISOLITE SYSTEMS' OPPOSITION TO DEFENDANTS BLACK, ET AL.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

DOCS 1970797.1                                                    Case No:  2:13 CV 07501 ODW (ASx)

of Dentistry, in Fall 2006, Defendant Black informed Plaintiff Isolite Systems' employee, Parker Francis, of his interest in obtaining information about the Isolite Product. FAC, ¶20. On or about November 15, 2006, Defendant Black met with Plaintiff Isolite Systems' employees at the Malibu, California dental office of Dr. Thomas R. Hirsch, an officer of Plaintiff Isolite Systems and co-inventor of the Isolite Product (hereinafter referred to as "Dr. Hirsch"). FAC, ¶21. At the November 15, 2006 meeting, Defendant Black witnessed a demonstration of the Isolite Product, and received from Plaintiff Isolite Systems information about the design, manufacturing and operation of the Isolite Product. FAC, ¶22. Defendant Black informed Plaintiff Isolite Systems that he was interested in convincing Loma Linda University School of Dentistry to acquire the Isolite Product for use in its curriculum, and later arranged for demonstrations of the Isolite Product for its dental faculty, but Loma Linda University School of Dentistry decided not to acquire the Isolite Product. FAC, ¶23-25.

Unbeknownst to Plaintiff Isolite Systems, Defendant Black had used information that he received about the Isolite Product to formulate a plan to develop an imitation product, which he later named "Airbug", to be sold to existing and prospective customers of Plaintiff Isolite Systems. Defendant Black and Plaintiff's employee Parker Francis subsequently began working together to develop, manufacture and sell the imitation product with the intention of inducing existing and prospective customers of Plaintiff Isolite Systems to purchase it in lieu of the Isolite Product. Sometime in 2009, Defendant Black launched an intra-oral device that was an imitation of the Isolite Product (excluding the LED light source) sold under the trademark "Airbug," which one or more dental professionals referred to as an "Isolite knock-off." *See* FAC, ¶¶26-34 and Exhibit C thereto (comprising certain pages from the former active website controlled by Defendant Black found at http://air-bug.sqserver.com.). Defendant Black continued to manufacture, sell and

4

PLAINTIFF INNERLITE, INC. DBA ISOLITE SYSTEMS' OPPOSITION TO DEFENDANTS
BLACK, ET AL.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
DOCS 1970797.1                                                    Case No: 2:13 CV 07501 ODW (ASx)

offer to sell the Airbug imitation of the Isolite Product until at least sometime in 2010. FAC, ¶35.

On or about January 11, 2012, Defendant Black, in his capacity as President of Defendant Joogatech, executed an "Intellectual Property License and Tangible Property Purchase Agreement", dated January 11, 2012 (hereinafter referred to as "the Black/Zirc Contract"). *See* FAC, ¶36 and Exhibit D. According to the Black/Zirc Contract, Defendant Joogatech "doing business as airBUG ("AIRBUG")" is "the licensee of all rights to the Patent (as defined below) *and has developed and manufactured a proprietary Intra-Oral device and system* (including end user equipment, peripheral devices, accessories and parts thereof) related to the Patent, known as 'airBUG'." *See* FAC, Exhibit D, p. 33 (emphasis supplied). The "Patent" described therein is "United States Patent No. 8,029,280 entitled INTRA-ORAL DEVICE AND METHOD, issued on October 4, 2011, which is currently owned by Brian P. Black and licensed to AIRBUG." *See* FAC, ¶36 and Exhibit D, p. 33. The Black/Zirc Contract provides "AIRBUG hereby grants to ZIRC an exclusive and entire worldwide license to the airBUG device and system, an exclusive license to manufacture and sell the products claimed in the Patent…." *See* FAC, Exhibit D, p. 33.

In addition to enabling Defendant Zirc to make, use, sell and offer to sell the Mr. Thirsty accused device through the license, Defendant Black individually and/or on behalf of Defendant Joogatech, provided instructions, training, plans and/or other assistance to Defendant Zirc to enable Defendant Zirc to make, use, sell and/or offer to sell Defendant Black's Airbug. *See* FAC, ¶37. For example, Article VII of the Black/Zirc Contract, entitled "Support Obligations" provides in pertinent part as follows:

> "AIRBUG agrees to consult with ZIRC without compensation for a period of one (1) year following the execution of this Agreement. Such consultation is limited to training by AIRBUG personnel of ZIRC

personnel on matters related directly to the airBUG device and system…."

*See* FAC, ¶38 and Exhibit D, p. 34.  In addition, Defendant Black and/or Defendant Joogatech sold and/or otherwise transferred to Defendant Zirc "tooling, drawing, parts and prototype relating to the airBUG product," as well as "all airBUG inventory", as well as one or more molds applicable to the airBUG product.  Article VI of the Black/Zirc Contract provided for Defendant Zirc to pay to Defendant Joogatech "the sum of seventy-five thousand dollars ($75,000.00)…within five (5) days of receipt by ZIRC of this executed Agreement.  Further, ZIRC agrees to pay AIRBUG a royalty amount equal to five percent (5%) of the gross receipts paid to ZIRC…resulting from sales of the airBUG device or other devices, enhancements, or improvements derived from the airBUG device…."  *See* FAC, ¶39 and Exhibit D, p. 34.  Accordingly, not only have Defendant Black and Defendant Joogatech enabled Defendant Zirc to make, use, sell and offer to sell the accused Mr. Thirsty device through the licensing and assistance described in the FAC's allegations and the Black/Zirc Contract attached thereto, but Defendant Black and/or Defendant Joogatech are receiving money in the form of a royalty on the sale of each accused Mr. Thirsty device sold by Defendant Zirc.

Further, Defendant Black does not, as the Black Memo disingenuously states at page 1, sit passively by while Defendant Zirc makes, sells and offers to sell the accused Mr. Thirsty device, but rather actively aids and participates with Defendant Zirc in offering for sale the Mr. Thirsty accused device.  As alleged in the FAC, Defendant Black advertises and promotes Zirc's Mr. Thirsty on the website at www.desertpearldentistry.com by (a) asserting that "Dr. Black invented, patented and sold an intraoral isolation device, Mr. Thirsty, used by schools and clinics across the country," and (b) displaying a video of Zirc's Mr. Thirsty with Zirc's logo on the first frame.  *See* FAC, ¶41.

# ARGUMENT

## I.    LEGAL STANDARD FOR RULE 12(b)(6) MOTION

"To survive a dismissal motion, [(i)] a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2) – a short and plain statement of the claim;" (ii) the "'allegations must be enough to raise a right to relief above the speculative level;'" and (iii) "'the complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *MyMedicalRecords, Inc. v. Jardogs, LLC*, 2014 WL 585450, *1 (C.D. Cal. Feb. 14, 2014) (*Wright, J.*) ("*MMR*"), *citing Porter v. Jones,* 319 F.3d 483, 494 (9th Cir.2003); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint ... as true and ... in the light most favorable" to the plaintiff. *MMR,* 2014 WL 585450 at *1, *citing Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir.2001).

Here, the Black Defendants have presented extrinsic evidence outside of the pleadings in the form of a declaration from Dr. Black. Pursuant to Rule 12(d), if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Treating a Rule 12(b)(6) as a Rule 56 motion is disfavored when "(1) the motion comes quickly after the complaint was filed, (2) discovery is in its infancy and the nonmovant is limited in obtaining and submitting evidence to counter the motion, or (3) the nonmovant does not have reasonable notice that a conversion might occur." *Rubert-Torres v. Hospital San Pablo, Inc.* 205 F.3d 472, 475 (1st Cir. 2000). "Notice need not be explicit. It is adequate if the non-moving party…submits matters outside the pleadings to the judge and invites consideration of them." *In re Rothery*, 143 F. 3d 546, 549 (9th Cir. 1998). Here, given the recent filing of the FAC, the early stage of

7

PLAINTIFF INNERLITE, INC. DBA ISOLITE SYSTEMS' OPPOSITION TO DEFENDANTS
BLACK, ET AL.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
DOCS 1970797.1                                                    Case No:  2:13 CV 07501 ODW (ASx)

1  discovery, and the fact that Plaintiff has not submitted matters outside of the

2  pleadings, the Court should not treat this Rule 12(b)(6) motion as one for summary

3  judgment under Rule 56, and the extrinsic evidence should be excluded.[1]

4  **II.   THE D203 PATENT INFRINGEMENT CLAIM SHOULD *NOT* BE**

5  **DISMISSED**

6  ### A.   A Patent Cannot Be Held Invalid On A Rule 12(b)(6) Motion

7  The Black Defendants assert that "the fourth count of the Amended Complaint

8  should be dismissed for invalidity of the asserted patent."  *See* Black Memo at 1 and

9  8-10.   However, the Black Defendants fail to cite any case in which any court

10  anywhere has ever held a patent invalid on a motion to dismiss.  This is because to

11  do so would fly in the face of the Patent Act.  Accordingly, Plaintiff Isolite Systems

12  respectfully submits that it would be clear error to dismiss the Fourth Count on

13  grounds of the alleged invalidity of the D203 Patent on a Rule 12(b)(6) motion.

14  Section 282(a) of the Patent Act provides that "A patent shall be presumed

15  valid…The burden of establishing invalidity of a patent shall rest on the party

16  asserting such invalidity."   35 *U.S.C.* §282(a).   Section 282(b) provides that

17  invalidity is an affirmative defense that must be pled.  35 *U.S.C.* §282(b)*; see L.A.*

18  *Gear v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) ("Invalidity

19  due to functionality is an affirmative defense to a claim of infringement of a design

20  patent, and must be . . . .established by clear and convincing evidence."); *Microsoft*

21  *Corp. v. i4i Ltd. Partnership*, 131 S. Ct. 2238, 2242-43 (2011) (invalidity is a

22  question of fact that must be proved by the defendant by clear and convincing

23  evidence).   Indeed, when confronted with the issue of whether a design patent is

24  invalid on grounds of functionality, district courts have ruled that it is a question of

25  fact.  *See, e.g., Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.*, 491 F. Supp. 2d 871,

26

27  [1] To the extent the Court decides to convert the motion to a motion for summary judgment, Plaintiff respectfully requests the opportunity to submit a motion and declaration pursuant to Rule

28  56(d).

PLAINTIFF INNERLITE, INC. DBA ISOLITE SYSTEMS' OPPOSITION TO DEFENDANTS BLACK, ET AL.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
DOCS 1970797.1                                    Case No:  2:13 CV 07501 ODW (ASx)

875 n. 4 (D. Minn. 2007) ("It is true that functionality is a fact question with respect to invalidity, i.e., whether a design patent is invalid because the claimed design is functional is a question of fact."), *citing Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1461 (Fed. Cir. 1997) (reviewing for substantial evidence a finding of invalidity based on functionality); *ADC Telecomms., Inc. v. Panduit Corp.*, 200 F. Supp. 2d 1022, 1035 (D. Minn. 2002) ("Whether the features of a design are functional or ornamental is an issue of fact.").

The Black Defendants failed to plead invalidity as an affirmative defense or to prove this issue of fact by clear and convincing evidence. Further, it is improper for the Black Defendants to seek a ruling on invalidity of the D203 patent on a Rule 12(b)(6) motion. Accordingly, the Fourth Count should not be dismissed.

**B.    The Black Defendants Have Not Met The Requirements for Establishing Invalidity of the D203 Patent on Grounds of Functionality**

Even if this Court elected to entertain the issue of whether the D203 patent is invalid (which it is not) in the instant motion, the Black Defendants have failed to meet the requirements for proving invalidity. Therefore, the Black Defendants' motion to dismiss the Fourth Count in its entirety on the grounds that the D203 patent is functional should be denied.

**1.    Requirements for Establishing Invalidity of a Design Patent Based On Functionality**

In *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301 (Fed. Cir. 2013), the Federal Circuit addressed the factors to be considered on an allegation of invalidity of a design patent based on functionality. "A design patent can be declared invalid if the claimed design is 'primarily functional' rather than 'primarily ornamental', i.e., if 'the claimed design is "dictated by" the utilitarian purpose of the article.'" *Id.* at 1315, citing *L.A. Gear*, 988 F.2d at 1123 and *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002) (characterizing the "dictated by"

PLAINTIFF INNERLITE, INC. DBA ISOLITE SYSTEMS' OPPOSITION TO DEFENDANTS BLACK, ET AL.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

standard as a "stringent" one).

Contrary to the Black Defendants' singular focus on only one alleged feature of the D203, the so-called "fish-tail shape" feature, *see* Black Memo at 9, the alleged functionality of one separate feature is not determinative of whether the entire design of the D203 is functional. *High Point Design*, 730 F.3d at 1315 ("When performing this assessment, a court should view the claimed design 'in its entirety, for the ultimate question is not the functional or decorative aspect of each separate feature, but the overall appearance of the article.") (citations omitted).

The Federal Circuit instructs that at least five factors "may help determine whether a claimed design, as a whole, is 'dictated by' functional considerations:

> [1] whether the protected design represents the best design; [2] whether alternative designs would adversely affect the utility of the specified article; [3] whether there are any concomitant utility patents; [4] whether the advertising touts particular features of the design as having specific utility; [5] and whether there are any elements in the design or an overall appearance clearly not dictated by function.

*Id.* at 1315-16, *citing PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1366-67 (Fed. Cir. 2006) ("[A] full inquiry with respect to alleged alternative designs includes a determination as to whether the alleged alternative design would adversely affect the utility of the specified article, such that there are not truly alternatives within the meaning of our case law."). These five factors require extensive factual inquiry that cannot be determined on the face of the pleadings, which is why the determination of functionality of a design patent is a question of fact. *See Torspo Hockey Int'l*, 491 F. Supp. 2d at 875 n. 4; (D. Minn. 2007); *ADC Telecomms., Inc.*, 200 F. Supp. 2d at 1035; *see also Hupp*, 122 F.3d at 1461.

### 2. The Black Defendants Have Not and Cannot Meet The Requirements Of Showing Invalidity of the D203 Patent

The Black Memo completely disregards the controlling authority of the Federal Circuit regarding the Black Defendants' burden when it comes to

10

establishing the invalidity of a design patent due to functionality.  The Black Defendants have not directed the Court to any evidence in the FAC or the court record on any of the five factors described above, nor have they explained with any evidence (let alone enough to meet the very high clear and convincing proof standard) how the D203 patent's design is functional in its entirety as required by the Federal Circuit in *High Point*.  Rather, the Black Defendants offer only conclusory statements unsupported by any evidence such as, "Here, the overall intraoral device shown in D'203 is functional." *See* Black Memo at 8.

The Black Defendants argue that the design of the D203 patent contains a feature they call "the 'fish-tail' shape," which is functional, *ipso facto*, because the words "the cheek retractor portion having a curved, *fish-tail shaped* outer profile" appear in Claim 1 of the '973 Patent.  In addition, the Black Defendants assert that "as a matter of law, that shape cannot serve as the basis for the D'203, because it is specifically claimed as an innovative functional structure in the claims of Plaintiff's utility patent on the same object, the '973 patent." *See* Black Memo at 9.

As explained below, the invalidity of a patent cannot be established through the allegation of just one or even more than one functional features.

### 3. Courts May Factor Out Functional Features of A Design Patent As Part Of Its Claim Construction Not In A Motion to Dismiss

In *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, (Fed. Cir. 2008) (en banc), the Federal Circuit not only held that the ordinary observer test was the sole test for design patent  infringement, but also instructed courts conducting claim construction in design patent cases that they may, among other tasks, "*distinguish[] between those features of the claimed design that are ornamental and those that are purely functional.*" *Id., citing Oddzon Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the

11

non-functional aspects of the design as shown in the patent.") (other citations omitted; emphasis supplied).  Similarly, in *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010), the court rejected the plaintiff's argument that *Egyptian Goddess* precluded claim construction of a design patent, explaining:

> Although we proposed that the preferable course ordinarily will be for a district court not to attempt to construe a design patent claim, *id.*, we also emphasized that there are a number of claim scope issues on which a court's guidance would be useful to the fact finder. Among them, we specifically noted, is the distinction between the functional and ornamental aspects of a design....However, when the design also contains ornamental aspects, it is entitled to a design patent whose scope is limited to those aspects alone and does not extend to any functional elements of the claimed article.

*Richardson*, 597 F.3d at 1293-94 (citations omitted).

Accordingly, the Federal Circuit recognizes that many if not most design patents have both functional and ornamental features, and that design patent protection covers the ornamental features.  The presence of one or even more functional features does not mean that the design is "'primarily functional'...i.e., 'dictated by' the utilitarian purpose of the article.'"  *High Point Design*, 730 F.3d at 1315; *see also L.A. Gear,* 988 F.2d at 1123.  Indeed, the Federal Circuit has ruled that the test for establishing invalidity of a design patent due to functionality is a stringent one.  *See Rosco, Inc. v. Mirror Lite Co.,* 304 F.3d 1373, 1378 (Fed. Cir. 2002).  In light of the foregoing, even if the D203 Patent's design contains a "fish-tail shape" feature that is functional as alleged by the Black Defendants, they will have a full and fair opportunity to attempt to prove the alleged functionality of that feature during the claim construction phase of this case.

### 4.   Cases Cited By The Black Defendants Refute Their Position

The Black Defendants cite five cases ostensibly to support their argument that the Court should rule the D203 patent is invalid due to functionality in a Rule 12(b)(6) motion.  *See* Black Memo at 9-10.  In none of these cited cases did the court address functionality of a design patent in a Rule 12(b)(6) motion.  In most of

12

these cases, the Black Defendants failed to disclose some key aspect to this Court that would reveal the case actually controverts their argument.

For example, in their citation of *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 215 F.3d 1351 (Table), 1999 WL 674514 (Fed Cir. 1999) (*Berry Sterling II*), the Black Defendants failed to disclose (i) that invalidity due to functionality was found on a design patent applicable to a car holder cup after a full jury trial, not in a Rule 12(b)(6) motion, and (ii) that the plaintiff had failed to present evidence showing different ways of achieving the function of the article of manufacture at issue. *Berry Sterling II*, 1999 WL 674514 at *5-6, *citing L.A. Gear*, 988 F.2d at 1123 ("When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose.'"). Moreover, the Black Defendants mis-cite *Berry Sterling II,* which did not hold that "When a utility patent functionality claims a structure, a design patent cannot be valid based on the same feature" as the Black Defendants assert. *See* Black Memo at 9.[2]

*Berry Sterling II* illustrates that a judgment of invalidity of a design patent requires an intensive factual inquiry inappropriate for a Rule 12(b)(6) motion. The Black Defendants have failed to point to anything in the FAC or other court record sources proving by clear and convincing proof that there is only one way to achieve the function of the article of manufacture depicted in the D203 patent, or conversely, that there are not several ways to achieve the function. Accordingly, there is an insufficient evidentiary record before the Court to enable a ruling on functionality in a Rule 12(b)(6) motion.

Indeed, even the defendant in *Berry Sterling* was previously unsuccessful in

---

[2]  In *Barry Sterling II*, the court observed that in the file history, the claimed design in the '368 design patent "was distinguished [by the patent holder] from the prior art on the ground that *the upper portion and lower fluted portion of the cup form a single area joined by a shoulder*." *Barry Sterling II*, 1999 WL 674514  at *5 (emphasis supplied).  These same features of the cup are described as functional in the specification of the utility patent.  *Id., citing U.S. Patent No. 5,427,269* ('269 patent).  The Black Defendants have not provided any such evidence here.

PLAINTIFF INNERLITE, INC. DBA ISOLITE SYSTEMS' OPPOSITION TO DEFENDANTS BLACK, ET AL.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

establishing invalidity of the design patent on a motion for summary judgment. *See Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452 (Fed Cir. 1997) *("Berry Sterling I")*. In *Berry Sterling I*, the Federal Circuit vacated summary judgment due to district court's failure, *inter alia*, to consider alternative designs important to deciding whether the '369 design patent was invalid for functionality. *Id*. at 1455. (citing the five *High Point* factors).

The only other design patent case cited by the Black Defendants concerns an inapposite Central District of California opinion, *Z Produx, Inc. v. Make-up Art Cosmetics, Inc.*, 2013 WL 5941049 (C.D. Cal. Nov. 5, 2013), which the Black Defendants erroneously claim "specifically found that when a feature is called out in a utility patent, the feature cannot support a design patent." *See* Black Memo at 10. Rather, *Z Produx* involved a design patent for a makeup palette in which defendant was unsuccessful in its prior art invalidity challenge, and the court engaged in claim construction of the design patent applying the rule that functional features should be excluded from the design patent claim. *Id*. Accordingly, the court ruled that "Where a design is found to include both functional and ornamental features, the court must "factor[] out" the functional aspects of the design for the purposes of claim construction. *Z Produx*, 2014 WL 5941049 at * 4, *citing Richardson*, 597 F.3d at 1293.

The remaining cases cited by the Black Defendants are inapposite to the case at bar because they concern the issue of whether functionality renders a trademark or trade dress invalid, and that test is disparate from the test for functionality of a design patent. As stated in one of these trademark cases cited by the Black Defendants, *Spotless Enterprises, Inc. v. A & E Products Group L.P.*, 294 F.Supp.2d 322 (E.D.N.Y. 2003): "although the general considerations of functionality are of course similar, *the functionality doctrine in trademark law is quite distinct from the functionality determination in design patents*. Although functionality will invalidate

a design patent only when the design is 'dictated' by the function, a lesser showing of functionality is necessary to invalidate trademarks." *Spotless*, 294 F.Supp.2d at 350 (citations omitted).[3]

A second trademark case mis-cited by the Black Defendants is *TrafFix Devices, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23, 27, 121 S. Ct. 1259-60 (2001), which does not support the Black Memo's erroneous statement that "trademark… employs the same non-functionality requirement" as design patents. Black Memo at 9. In fact, the determination of functional trademark invalidity is much easier to establish than the stringent showing required for design patents. Indeed, the *Spotless* court cited *TrafFix Devices, Inc.,* 121 S. Ct. at 1259-60, as one of the "Supreme Court's recent rulings which curtail trade dress protection by expanding the functionality doctrine," thus making the trademark functionality doctrine even more disparate from the design patent invalidity doctrine. *See Spotless*, 294 F.Supp.2d at 350.

The third trademark case mis-cited by the Black Defendants is *In re Becton, Dickinson and Co.*, 675 F.3d 1368, 1375 (Fed Cir. 2012), which was not "applying the same [design patent invalidity] rule in the context of trademark," as the Black Defendants claim. *See* Black Memo at 9. Rather, *Becton* echoes the same observation about the easier trademark invalidity rule as *Spotless*, observing that a product configuration design trademark may not be eligible for registration due to functionality even if the product is the subject of a valid design patent. *In re Becton,* 675 F.3d. at 1375.

Footnote 4 of the Black Memo erroneously states that "Because the basis of

---

[3] The Black Memo neglected to disclose that the *Spotless* court refused to invalidate the design patents in that case. *Spotless*, 294 F.Supp. 2d at 348. Moreover, the burden of proof applicable to unregistered trade dress infringement actions is directly opposite to the burden of proof required in design patent cases. Under the Lanham Act, "the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional, *see 15 U.S.C. § 1125(a)(3)*, whereas under the Patent Act, the accused infringer challenging validity of an issued design patent has the burden of proof by clear and convincing evidence, making it much more difficult to establish invalidity of a design patent.

PLAINTIFF INNERLITE, INC. DBA ISOLITE SYSTEMS' OPPOSITION TO DEFENDANTS BLACK, ET AL.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

DOCS 1970797.1                                          Case No: 2:13 CV 07501 ODW (ASx)

the infringement allegation is the 'fish-tail' shape, and that it is a functional element, it cannot serve as the basis for a claim against the Mr. Thirsty device as a matter of law, and the claim must be dismissed." *See* Black Memo at 10 n. 4. The Black Defendants have fabricated the notion that "the basis of" the D203 patent infringement claim is the so-called "fish-tail shape." [4] They have proffered no evidence to support this disingenuous contention.

In light of (i) the overwhelming weight of authority cited above, (ii) the absence of any evidence in the record pointed to by the Black Defendants to even come close to meeting their heavy clear and convincing evidence burden, and (iii) the numerous mis-cites of cases that actually refute the Black Defendants' position, Plaintiff Isolite Systems respectfully submits that the Fourth Count asserting design patent infringement of the D203 patent against the Black Defendants should not be dismissed. Accordingly, the Court should deny the Black Defendants motion to dismiss the Fourth Count.

## III.   THE BLACK DENTAL CORP. HAS NOT MET THE STANDARDS TO STRIKE ALLEGATIONS

The Black Defendants appear to be moving to strike certain allegations of the First Amended Complaint with respect to the Black Dental Corp. due to a claimed improper "and/or," but they fail to specify what specific allegations should be stricken. *See* Black Memo at 5. Plaintiff affirms that the FAC only alleges direct infringement by the Black Dental Corp. *See Pegram v. Herdrich*, 530 US 211, 230, 120 S.Ct. 2143, 2155, fn. 10 (2000) (plaintiff's brief can "clarify allegations in [the] complaint whose meaning is unclear."). Further, it is unclear precisely what allegations the Black Defendants seek to strike. The Black Defendants refer to several paragraphs in the FAC as an "example," but do not specify the paragraphs or

---

[4] The Black Memo mistakenly refers to Paragraph 54 of the FAC in its argument, see Black Memo at 9, but that paragraph specifically relates to the trade dress infringement claim against Zirc.

the portions of paragraphs that are alleged to be improper.  Without such specificity, it is impossible for Plaintiff to properly address this argument.

If Plaintiff assumes that the Black Defendants seek to strike or dismiss only those allegations relating to "Innerlite losing customers and having to lower its purchase price," found in paragraphs 79(b), (c) and 86(b), (c), then the Black Defendants have failed to provide any legal basis for granting such a motion.  Black Memo at 5.  The Black Defendants do not cite to any case law or statute in support of this argument, stating only that "It is clear that these allegations are attributing to the Black Defendants the damages allegedly caused by Zirc."  *Id.*  Contrary to the Black Defendants' claim, lost sales and price erosion are recoverable as lost profits in an action for direct patent infringement.  *See, e.g., Lam, Inc. v. Johns-Manville Corp.*, 718 F. 2d 1056, 1065 (Fed. Cir. 1983) ("Lost profits may be in the form of diverted sales, eroded prices, or increased expenses.").  The FAC alleges that the Black Dental Corp. advertises, promotes and uses Zirc's Mr. Thirsty product, so it is reasonable to seek lost profits for this direct infringement from the Black Dental Corp.  *See* FAC ¶¶41, 42, 75.  Therefore, the Black Defendants' motion regarding the Black Dental Corp. should be denied.

## IV.  JOOGATECH'S CLAIMED STATUS AS A DISSOLVED CORPORATION DOES NOT IMMUNIZE IT FROM SUIT

The Black Defendants claim that the allegations against Joogatech should be dismissed because it "does not even exist."  Black Memo at 7.  However, under California Corporations Code Section 2010, "A corporation which is dissolved nevertheless continues to exist for the purpose of…defending actions by or against it."  Cal. Corp. Code § 2010(a).  Further, "No action or proceeding to which a corporation is a part abates by the dissolution of the corporation."  *Id.* at 2010(b).  *See also Penasquitos, Inc. v. Superior Court,* 53 Cal.3d 1180 (1991) ("[S]ection 2010…permits the assertion of postdissolution claims against dissolved

17

PLAINTIFF INNERLITE, INC. DBA ISOLITE SYSTEMS' OPPOSITION TO DEFENDANTS BLACK, ET AL.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

DOCS 1970797.1                                    Case No:  2:13 CV 07501 ODW (ASx)

corporations."); *Cyr v. Offen & Co.,* 501 F.2d 1145, 1153 (1st Cir. 1974) ("We also look to the familiar law that a corporation cannot disable itself from responding to liability for its acts by distributing its assets.")  Pursuant to the Black/Zirc Contract, Joogatech receives a 5% royalty "until the expiration or termination of this Agreement."  FAC ¶ 39 Ex. D at 34 (Payment).  Joogatech also agreed to "consult with ZIRC without compensation for a period of one (1) year."  *Id.* at ¶ 38, Ex. D (Support Obligations).[5]   Therefore, Joogatech's claimed status as a dissolved corporation is not sufficient to dismiss the claims against it, and the Black Defendants' motion on these grounds should be denied.

V. **THE BLACK DEFENDANTS FAIL TO SHOW THAT PLAINTIFF'S CLAIMS FOR INDUCED INFRINGEMENT SHOULD BE DISMISSED**

The Black Defendants request that Plaintiff's inducement claims be dismissed without leave to amend, claiming that they are not properly alleged and that it would be impossible to allege "that Dr. Black or Joogatech knew of the patents-in-suit prior to the filing of the complaint."  The Black Defendants also claim that the FAC "negates the possibility of inducement."  First, rather than "negating" inducement, the FAC sufficiently pleads Black's and Joogatech's activities relating to the Black/Zirc contract and Black's advertising and promoting.  Second, taking the allegations in context, Plaintiff has sufficiently pled induced infringement.  The Black Defendants admit that they knew of the patents-in-suit when the "original suit was filed," and case law supports such knowledge as sufficient to show indirect infringement.  Therefore, the Black Defendants' motion to dismiss should be denied,

---

[5] The Black Defendants also wrongly claim that there are no facts pled supporting a direct infringement claim.  However, as discussed in section E(1), *infra*, the activities that Joogatech is alleged to have engaged in postdate the D203 Patent, and included sale of inventory, designs, etc., among the other activities described in paragraphs 36-39 of the FAC.  Especially given the liberality allowed by Form 18 in pleading direct infringement, Plaintiff's allegations are more than sufficient.  *See, e.g., McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1356-57 (Fed. Cir. 2007).

as the inducement claims have been plausibly alleged; in the alternative, Plaintiff should be granted leave to amend.

## A. The FAC Does Not "Negate" Inducement

The Black Defendants state that "the Amended Complaint itself negates the possibility of inducement." Black Memo at 6. This claim appears to be based on the assertion that after the Zirc/Black contract was executed in January 2012, "Dr. Black had no control over whether a product was made or sold by Zirc or not." *Id.* First, the Black Defendants do not cite any case law supporting this claim. Second, although the Black Defendants appear to claim that the activities referenced in the FAC occurred solely before the patents-in-suit issued, the D203 Patent was issued on May 4, 2010, almost two years before the Zirc/Black contract was executed and the '973 Patent was issued on October 30, 2012, while Black and Joogatech's consulting duties were still ongoing. *See* FAC at ¶ 17. "Licensing others may constitute active inducement if the licensor provides instructions, plans, or the like enabling the licensee to practice the patented product or process." 5-17 *Chisum on Patents*, §17.04[a]. The FAC alleges that Black and Joogatech "provided instructions, training, plans and/or other assistance to Defendant Zirc to enable Defendant Zirc to make, use, sell and/or offer to sell" an infringing product. FAC at ¶ 37. In addition to the activities surrounding the license to Zirc, Plaintiff further alleges that Black "advertises and promotes Zirc's Mr. Thirsty." Advertising an infringing use can also be evidence of steps taken to induce infringement. *See, e.g., DSU Medical Corp. v. JMS Co., Ltd,* 471 F.3d 1293, 1305 (Fed. Cir. 2006). Therefore, the Black Defendants' claim that the FAC "negates the possibility of inducement" has no basis, and must be denied.

## B. Plaintiff Properly Alleges Infringement in The Alternative

The Federal Circuit recently held that a complaint need not "allege facts that prove all aspects of its claims, or at the very least make those claims

19

PLAINTIFF INNERLITE, INC. DBA ISOLITE SYSTEMS' OPPOSITION TO DEFENDANTS BLACK, ET AL.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

DOCS 1970797.1                                                                    Case No:  2:13 CV 07501 ODW (ASx)

probable….[T]he plausibility requirement... 'simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged.'" *In re Bill of Lading,* 681 F.3d 1323, 1341 (Fed. Cir. 2012) (*quoting Twombly,* 550 U.S. at 557).  The Black Defendants claim that "the Amended Complaint fails to actually plead inducement against [Black and Joogatech] in that the allegation refers only to a 'violation of 35 U.S.C. § 271(a) and/or (b)."  Black Memo at 5.  This citation is misleading at best, as the Complaint actually states:

> On information and belief, Defendant Black and Defendant Joogatech have committed infringement of the '973 patent in violation of 35 U.S.C. § 271(a) and/or (b) by directly infringing (either literally or under the doctrine of equivalents) and/or aiding and inducing Defendant Zirc to infringe the '973 patent through the acts including, but not limited to, one or more of the acts set forth in paragraphs 36-39 above with respect to Defendant Zirc's Mr. Thirsty, which is covered by at least one claim of the '973 patent and therefore embodies the patented invention described in the '973 patent.

FAC at ¶ 76.  This allegation clearly puts the Black Defendants on notice of liability for direct and indirect infringement.

The Black Defendants take issue with the use of "and/or," but alternative pleading is permitted by Rule 8.  F.R.C.P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."); *see also Pecorino v. Vutec Corp.,* 934 F.Supp.2d 422, 450 (E.D.N.Y. 2012) ("Plaintiffs need not make a pretrial election between the theories of direct infringement, inducing infringement, and contributory infringement.").  Further, "[And/or] has a specific meaning—X and/or Y means X or Y or both."  Kenneth A. Adams & Alan S. Kaye, *Revisiting the Ambiguity of "And" and "Or" in Legal Drafting,* 8 S. John's L. Rev. 1167, 1192-92 (2007).  Therefore, as Plaintiff has pled direct infringement and induced infringement in the alternative—as either one or both—the Black Defendants' motion to dismiss on this ground should be denied.

**C.     The Induced Infringement Claims Against Black and Joogatech Should Not Be Dismissed for Failure to Plead Knowledge of the Patents-in-Suit**

The Black Defendants also claim that the indirect infringement claims should be dismissed for failure to plead knowledge of the patents-in-suit, and further claim that leave to amend should not be allowed because "There can be no good-faith basis to allege, even on information and belief, that Dr. Black or Joogatech knew of the patents-in-suit prior to the filing of the complaint in this case."  Black Memo at 6, n.3.  The Black Defendants do not cite to a case in support of this assertion, which is contrary to this Court's decision in *MMR*.  In *MMR*, the Court held that for purposes of pleading induced infringement, "A defendant should not be able to escape liability for postfiling infringement when the complaint manifestly places the defendant on notice that it allegedly infringes the patents-in-suit."  *MMR*, 2014 WL 585450 at *4; *see also Service Solutions U.S., L.L.C. v. Autel U.S., Inc.,* No. 13-10534, 2013 WL 5701063, n.12 (E.D.MI. Oct. 18, 2013) ("Although the complaint does not contain the words "Defendants had knowledge of the patents-insuit," the Court is persuaded that, taken as a whole and drawing all reasonable inferences in favor of Plaintiff, the complaint sufficiently alleges that Defendants necessarily had knowledge of the patents—at the latest—as of the date of service.").  Therefore, Plaintiff has *at least* sufficiently alleged induced infringement for acts occurring after the FAC was filed.

In *Service Solutions U.S.,* the court found that knowledge based on service of the complaint was sufficient to allow the plaintiff to proceed with its inducement claim (even though knowledge was not specifically alleged in the complaint), subject to proof at trial:

> Whether Defendants knew of the patents-in-suit before being served with this lawsuit remains to be determined.  If Plaintiff prevails on its claim of induced infringement but is ultimately unable to show such pre-service knowledge, damages will only be allowed to the extent that they are the result of induced infringement occurring after the date of service.

*Service Solutions U.S., L.L.C. v. Autel U.S., Inc.,* 2013 WL 5701063 at n.11.  Here, the Black Defendants have judicially admitted that they were aware of the patents-in-suit *prior to* the filing of the FAC.  *See, e.g.,* Black Memo at 1.  "[S]tatements of fact contained in a brief may be considered admissions of the party in the discretion of the district court."  *American Title Ins. Co. v. Lacelaw Corp.*, 861 F. 2d 224, 227 (9th Cir. 1988).  This judicial admission should suffice to show that the Black Defendants have pre-suit knowledge of the patents-in-suit, and it would be appropriate to allow the parties to explore the precise timing of this pre-lawsuit knowledge through discovery.

This Court previously held in *MMR* that "a plaintiff…may only use the filing of the complaint to trigger prospective liability for post-filing conduct," and if the Court is inclined to apply this principle in this case, Plaintiff respectfully requests leave to amend the FAC to include allegations sufficient to infer the Black Defendants' pre-suit knowledge of the patents-in-suit.[6] *MMR,* 2014 WL 585450 at *4.  However, the procedural situation in *MMR* is somewhat different.  Plaintiff MMR originally filed suit against defendants Jardogs and Allscripts separately.  *Id.* at *5.  The court issued an order requiring Plaintiff to join defendants in the same action, and Plaintiff subsequently added defendant Allscripts to the Jardogs action and dismissed the Allscripts action.  *Id.*  Here, Plaintiff filed a lawsuit against Zirc in 2013, and the Black Defendants were not parties to any action until the FAC was

---

[6] Leave to amend should be liberally granted.  *See* F.R.C.P. 15(a) (leave to amend "shall be freely given when justice so requires."); *United States v. Corinthian Colleges,* 655 F.3d 984, 995 (9th Cir. 2011) (standard for allowing leave to amend is "generous").  Based on the allegations in paragraphs 19-39 of the FAC concerning the license agreement with Zirc dating *after* the 'D203 patent, the consulting requirements post-dating the '973 Patent, as well as the allegations detailing Black's previous copying of Plaintiff's products, it would be reasonable to infer knowledge or willful blindness.  *See Global –Tech Appliances, Inc. v. SEB S.A.,* 131 S.Ct. 2060, 2068-69 (2011) (A party is willfully blind if it believed there was a high probability that the acts constituted patent infringement and took deliberate steps to avoid learning the acts it induces constitute patent infringement).  As in *MMR,* these inferences, considered together, should be enough to allow Plaintiff to "plead[] this inference at this stage."  *MMR,* 2014 WL 585450 at *5.  Given the multiple grounds, leave to amend would not be "futile," as the Black Defendants claim in Section Five of the Black Memo.

PLAINTIFF INNERLITE, INC. DBA ISOLITE SYSTEMS' OPPOSITION TO DEFENDANTS BLACK, ET AL.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

filed in March 2014. Given that the Black Defendants have admitted to pre-suit/pre-FAC knowledge, at least as of the filing of the original complaint, Plaintiff should be allowed to "walk the evidentiary gauntlet" to prove pre-suit knowledge. *Id.*

Therefore, in light of the foregoing, (i) under the rule set forth in *MMR,* knowledge of the patents-in-suit as of the date of service of the FAC is sufficient for inducing infringement, so the motion should be denied as to conduct occurring post-service of the FAC; (ii) under *Service Solutions* and the Black Defendants' judicial admission, the Black Defendants have pre-suit knowledge of the patents-in-suit, and the Court should therefore deny the motion and allow Plaintiff to "walk the evidentiary gauntlet" described in *MMR* and plead pre-suit knowledge subject to proof at trial; and (iii) if the court does not find the judicial admission to be sufficient grounds to deny the motion dismiss regarding pre-suit knowledge, Plaintiff respectfully requests leave to amend as discussed in n. 6, *supra.*

## CONCLUSION

In view of (i) the overwhelming weight of authority cited above, (ii) the absence of any evidence in the record cited by the Black Defendants and their concomitant failure to meet their clear and convincing evidence burden to demonstrate invalidity, and (iii) the numerous mis-cites of cases that actually refute the Black Defendants' position, Plaintiff Isolite Systems respectfully submits that the Fourth Count asserting design patent infringement of the D203 patent against the Black Defendants should not be dismissed. Additionally, the Black Defendants have failed to provide any authority supporting their claim to strike allegations against Black Dental Corp. Further, Joogatech's claimed status as a dissolved corporation does not immunize it from suit, and Plaintiff has adequately pled direct infringement against Joogatech. Finally, the Black Defendants have failed to show that the Plaintiff's claims for induced infringement should be dismissed with prejudice, because (a) the FAC already contains substantial factual allegations supporting a

PLAINTIFF INNERLITE, INC. DBA ISOLITE SYSTEMS' OPPOSITION TO DEFENDANTS BLACK, ET AL.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

claim of inducement of infringement against Defendant Black and Joogatech; (b) Defendant Black judicially admitted to knowledge as of the filing of the original complaint, and as such knowledge pre-dates the FAC, Plaintiff has sufficiently pled inducement of infringement and should be allowed to prove its case through discovery and trial; and (c) even if the Court finds that Plaintiff has not sufficiently alleged inducement of infringement, leave to amend is liberally granted.

In light of the foregoing arguments and authorities, Plaintiff Innerlite, Inc. dba Isolite Systems respectfully requests that this Court deny Defendants Brian P. Black, Brian P. Black, DDS, Inc., and Joogatech, Inc.'s Motion to Dismiss First Amended Complaint, filed May 13, 2014.

Respectfully submitted,

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

DATED:  May 23, 2014

By: /s/ *Paul E. Burns*
Paul E. Burns, Esq.

Attorneys for Plaintiff
INNERLITE, INC. dba ISOLITE SYSTEMS

24

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record that have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Rule Cv – 7 on May 23, 2014.  Any other counsel of record will be served by traditional means of service on this same date.


/s/     *Paul E. Burns*

Paul E. Burns

PLAINTIFF INNERLITE, INC. DBA ISOLITE SYSTEMS' OPPOSITION TO DEFENDANTS
BLACK, ET AL.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Case No:  2:13 CV 07501 ODW (ASx)