O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| **INNERLITE, INC. D/B/A ISOLITE SYSTEMS,**  Plaintiff,  vs.  **ZIRC DENTAL PRODUCTS, INC., ET AL.**  Defendants. | **Case No.: SA CV 13-7501-DOC (RNBx)**  **ORDER REGARDING CLAIM CONSTRUCTION** |

Before the Court are Plaintiff Innerlite, Inc. d/b/a Isolite System's ("Plaintiff" or "Isolite Systems") Opening Claim Construction Brief ("Opening Brief") (Dkt. 99), Defendant Zirc Dental Products, Inc.'s ("Zirc") Responsive Claim Construction Brief ("Zirc Responsive

Brief") (Dkt. 101), and Defendants Brian P. Black and Brian P. Black, DDS Inc.'s ("the Black Defendants") Responsive Claim Construction Brief ("Black Responsive Brief").

## I.   Background

This is a patent infringement suit brought by Plaintiff Isolite Systems against Defendant Zirc and the Black Defendants. *See generally* Third Amended and Supplemental Complaint ("TAC") (Dkt. 84).

On October 30, 2010, the U.S. Patent and Trademark Office ("USPTO") issued U.S. Patent No. 8,297,973 ("the '973 patent"), entitled "Intraoral Device." TAC ¶ 16. On February 5, 2013, the USPTO issued a Certificate of Correction for the '973 patent. *Id.* On June 21, 2005, the USPTO issued U.S. Patent No. 6,908,308 ("the '308 patent"), entitled "Intraoral Device and Method Using the Same." *Id.* ¶ 17. On January 15, 2002, the USPTO issued U.S. Patent No. 6,338,627 ("the '627 patent"), entitled "Intraoral Device." *Id.* ¶ 18. On May 4, 2010, the USPTO issued U.S. Patent No. D615,203 ("the 'D203 patent"). *Id.* ¶ 19. Platiniff Isolite Systems is the owner by assignment of all right and title to and interest in the '973 patent, the '308 patent, the '627 patent, and the 'D203 patent. *Id.* ¶¶ 16–19. The '973, '627, and '308 patents claim priority to U.S. Patent No. 6,022,214 ("the '214 patent"), which the USPTO issued on February 8, 2000. TAC ¶ 12; *see also* Opening Br. at 1 n.1. The patents are for intraoral dental devices. Isolite Systems manufactures, distributes, and sells two versions of its "isolation, retraction, protection, and evacuation intraoral device, one with an illumination feature." Declaration of Thomas R. Hirsch ("Hirsch Decl.") ¶ 9; *see also* TAC ¶¶ 11–14.

In 2009, Defendant Black allegedly "launched" an intra-oral device sold under the trademark "Airbug." TAC ¶ 32. Plaintiffs allege Defendant Zirc manufactures, distributes, sells, and/or offers to sell Defendant Black's Airbug "under a new mark known as 'Mr. Thirsty.'" *Id.* ¶ 41. In addition, Defendant Zirc allegedly distributes, sells, and offers to sell "mr. thirsty® one-step" *Id.* ¶¶ 54–55.

Plaintiff Isolite Systems asserts the '973 patent,[1] the '627 patent,[2] and '308 patent[3] against Defendant Zirc. Plaintiff only asserts the '973 patent against the Black Defendants. *See* Mot. at 1. Only the '973, '627, and '308 patents, and not the 'D203 patent, are at issue for purposes of claim construction.

## II.    Legal Standard

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). Claim construction "begins with the claim language itself." *Id.* Claim terms are generally given "their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art." *Id.* at 1312–13 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). However, the terms must be read in the context of the entire patent. *Phillips*, 415 F.3d at 1314. In interpreting the claim, the court focuses primarily on the intrinsic evidence of record, including the claims themselves, the specification, and if in evidence, the prosecution history. *Id.* at 1312–17; *see also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005).

Among the intrinsic evidence, the specification is always highly relevant to the claim construction analysis – it is the single best guide to the meaning of a disputed term, and is usually dispositive. *Id.* at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996)). "The specification is, thus, the primary basis for construing the claims." *Id.* (quoting *Standard Oil Co. v. Am. Cyanamid Co.,* 774 F.2d 448, 452 (Fed.Cir.1985)). It is "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." *Id.* at 1317. In addition to the

---

[1] The '973 patent has three independent claims and 31 dependent claims. The independent claims are claims 1, 14, and 27. Claims 14 and 27 contain limitations that are identical to those in Claim 1, with the exception of certain limitations that are omitted.

[2] The asserted claims of the '627 patent are independent Claim 1 and dependent Claims 3, 5, 6, and 7.

[3] The asserted claims of the '308 patent are independent Claims 1, 7, and 8, and dependent Claims 3, 5, and 6.

specification, the court will also consider the prosecution history, consisting of "the complete record" of the patent. *Id.* at 1317. If, within the prosecution history, a patentee clearly and unmistakably disavowed a claim construction, then it disclaimed that construction. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003); *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005). However, because the prosecution history often lacks the clarity of the specification, it is less useful for claim interpretation purposes. *Phillips*, 415 F.3d at 1317.

While the court may also consider extrinsic evidence, including expert testimony, dictionaries, and learned treatises, as the Federal Circuit has recently made clear, such evidence is generally viewed as less reliable than intrinsic evidence. *Phillips,* 415 F.3d at 1317–18. Therefore, the court must use its discretion in admitting and weighing extrinsic evidence, keeping in mind its inherent flaws. *Id.* at 1319.

There is also "a presumption that each claim in a patent has a different scope." *Comark*, 156 F.3d at 1187; *see also Phillips*, 415 F.3d at 1315. "[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Leibel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004).

### III.    Analysis

Plaintiff, Defendant Zirc, and the Black Defendants have agreed to the construction of some of the claim terms in the '973 patent, and Plaintiff and Defendant Zirc have agreed to some of the claim terms in the '627 and '308 patents. *See* Opening Brief at 3. However, the parties dispute two terms in the '973 patent, and a number of terms in the '627 and '308 patents. The Court will address the disputed claim terms in turn.

#### A.  Disputed Claim Constructions in the '973 Patent

##### 1.       "Main Body Portion Having a Curved Outer Profile"

The first term at issue in the '973 patent is "main body portion having a curved outer profile." The parties have agreed that "main body portion" should be construed as "principle or primary portion." *See* Opening Br. at 3; Zirc Responsive Br. at 2; Black Responsive Br. at 1.

Thus, the dispute centers around the phrase "curved outer profile." Plaintiff proposes that "the main body portion having a curved outer profile" be construed as "the principal or primary portion having an external outline in which the upper and lower boundaries deviate from a straight line without sharp corners or sharp angles." Opening Br. at 8. Defendant Zirc proposes that "curved outer profile" means "concave surface." Zirc Responsive Br. at 2. The Black Defendants propose the disputed claim term be construed as "convex outer surface." Black Responsive Br. at 7. In the alternative, the Black Defendants argue the claim term is indefinite. *Id.* at 7, 14, 16.

As a preliminary matter, Plaintiff and Defendants disagree about the perspective from which they should view the relevant portions of the device to construe the disputed claim terms. Defendants argue the Court should construe the term based on a top-down perspective, while Plaintiffs argue the Court must construe the term from the front. Specifically, Defendant Zirc argues the specification defines the claim term by reference to Figures 3, 4, 5, 6, 7, 8A, 18B, 19B, and 19C, which "all show the main body having a curved outer profile which creates a concave surface." Zirc Responsive Br. at 2. The Black Defendants agree that the object's profile "is curved, creating a concavity on one side and a convexity on the other." Black Responsive Br. at 8. Plaintiff responds both that these interpretations improperly import limitations from the specification into the claim, Reply at 4, and that Defendants ignore the disputed term's relationship to the succeeding claim phrase "check retractor portion having a curved, fish-tail shaped outer profile," *id.* at 8. Plaintiffs argue the succeeding claim phrase indicates both "check retractor portion having a curved, fish-tail shaped outer profile," and "main body portion having a curved outer profile" must be construed based on a front view; construing the claim terms based on a top-down view would lead to inconsistent constructions.

The Court "begins with the claim language itself," giving it "the meaning that the term would have to a person of ordinary skill the in art." *Phillips*, 415 F.3d at 1312–13. The relevant portion of Claim 1 including the disputed term (the same language also appears in Claims 14 and 27) reads as follows:

An intraoral device, comprising: a tongue and cheek retractor, the tongue and cheek retractor comprising, a main body portion and a cheek retractor portion; the *main body portion having a curved outer profile* and including a lower tongue retractor portion configured to keep adjacent tongue tissue protected and retracted during use . . . .

. . .

the cheek refractor portion having a curved, fish-tail shaped outer profile and being configured to . . . .

Opening Br. Ex. A ("'973 Patent") at Col. 14: 34–42 (emphasis added). Although "certain terms may be at the center of the claim construction debate, the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms." *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1299 (Fed. Circ. 2003); *see also Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc.*, 429 F.3d 1364, 1373 (Fed. Cir. 2005) (noting that the person of the ordinary skill in the art is "deemed to read" the claim term in the context of the particular claim in which the disputed term appears along with the context of the entire patent). The Court therefore considers the context of the words surrounding the disputed claim term. The language describing the cheek refractor portion as having "a curved, fish-tail shaped outer profile" guides the Court in determining the meaning of "curved outer profile." In particular, the Court agrees with Plaintiff that relying on the Figures illustrating a top-down perspective (as shown in Figures 5, 8A, 8B, 19C, for instance) would lead the Court to inconsistently construe the terms "curved outer profile," and "curved, fish-tail shaped outer profile." From the top-down perspective shown in some of the embodiments disclosed in the specification, the cheek retractor portion does not have a fish-tail shape. *See, e.g.*, Opening Br. Ex. A at 33 ("Figure 5"). In contrast, when viewing the preferred embodiments illustrating the disputed term from the front perspective view or front elevational view as depicted in Figures 1 and 6, Opening Br. Ex A at 30, 33, the "curved, fish-tail shaped outer profile" of "[t]he check retractor portion 52," *id.* at Col. 5:48, is apparent. Thus, the Court will not construe "main body portion having a curved outer profile" by relying on the top-down perspective.

-6-

In addition to contending Defendants' construction relies on an incorrect viewpoint, Plaintiffs assert Defendants' proposed constructions improperly limit the claim term. Although the Court may look to drawings, which are part of the invention's written description, *see Fenner Investments, Ltd. v. Cellco Parntership*, 778 F.3d 1320, 1323–24 (Fed. Cir. 2015), the Court must not improperly read limitations from the specifications into the claim term, *see Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1368 (Fed. Cir. 2005) ("While claims are indeed to be construed in light of the specification . . . , the district court in this case improperly imported limitations from the specification into the claims, thereby restricting the claims to coverage of a single embodiment."). The Court is concerned Defendants' proposed constructions do just that. Indeed, Plaintiff argues Defendants both mischaracterize what the embodiments show and exclude preferred embodiments. In particular, Plaintiff asserts that, Figures 1 and 3–10 "all depict embodiments showing an 'arcuate, semicircular shape' of the entire 'tongue and cheek retractor 22' because the unclaimed, arcuate, semi-circular shaped 'dispersion piece 24' is shown to be attached to the 'tongue and cheek retractor 22' [which] is made of a single molded piece of soft, flexible, bicompatible material . . ." Reply at 9 (quoting Opening Br. Ex. A at Col. 5:9–11). However, "when the unclaimed arcuate, semicircular shaped dispersion piece 24 is *not* attached to [tongue and cheek retractor 22], as shown in Figure 2, the tongue and cheek retractor 22 does not appear to have the same 'arcuate, semicircular shape' and therefore neither it nor the 'main body portion 50' can be perceived as 'concave' or 'convex' . . . ." Reply at 9–10.[4] In other words, "tongue and cheek retractor 22," without the attachment of "dispersion piece 24," does not have the shape Defendants' constructions suggest. Therefore, Plaintiffs argue, both Defendants' proposed constructions exclude preferred embodiments. The Court agrees that Defendant Zirc and the Black

---

[4] *See also* Opening Br. Ex A at Col. 5:1, 20–25 ("With reference to FIGS. 1–7 . . . the tongue and cheek retractor 22 may be a separate piece that can be easily added to or removed from the dispersion piece. The tongue and cheek retractor 22 may also come in two different main configurations, depending on the side of the mouth being examined and/or operated on, i.e., left side, right side, and different sizes for different size and shaped mouths.").

Defendants' proposed constructions improperly limit the claim. *See Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683 689 (Fed. Cir. 2008) ("'[E]ach claim does not necessarily cover every feature disclosed in the specification. When the claim addresses only some of the features disclosed in the specification, it is improper to limit the claim to other, unclaimed features.'") (quoting *Ventana Med. Sys., Inc. v. Biogenix Labs., Inc.*, 744 F.3d 1173, 1181 (Fed. Cir. 2006)).

Turning to the correct construction of the phrase "curved outer profile," the Court concludes the term "curved" should be construed as "deviate from a straight line without sharp corners or sharp angles." *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 804–05 (Fed. Cir. 2007) (upholding the district court's construction of the term "curved" as meaning "a shank that 'has a bend or deviation from a straight line without sharp corners or sharp angles.'").

With respect to the word "profile," the Court notes that both Defendant Zirc and the Black Defendants appear to define the term "profile" as "surface." The Court agrees with the Black Defendants that the '973 patent specification does discuss the tongue and cheek retractor having inner and outer *surfaces*. For instance, the specification states, with reference to Figures 18A–19E, that "[t]he tongue and cheek retractor 240 has inner surfaces 260 and outer surfaces 270." Opening Br. Ex. A at Col 11:40–41. However, the claim term at issue contains the phrase "outer *profile*," not "outer *surface*." Thus, given the language of the claim, the Court will not equate the word "surface" with the word "profile." The Court agrees with Plaintiff that the plain meaning of "profile" is "an outline of an object," *see* Declaration of John B. Brunski ("Brunski") Decl. Ex. 2 at 59; *id.* Ex. 3 at 77, and that the plain meaning of "outline" is "a line indicating the outer contours or boundaries of an object or figure," *see id.* Ex. 2 at 60. The drawings included in the specification are consistent with and support this meaning. Figures 2 and 6, for instance, depict embodiments showing the "outer boundaries" of the "upper roof portion 54" and the "lower tongue retractor portion 56" as "curved" or "deviating from a straight line without sharp corners or sharp angles." Opening Br. Ex. A at 31, 33. Including the phrase "upper and lower boundaries" in the construction is also supported by the preferred embodiments and the drawings (including Figures 2 and 6) and will help clarify the term to the

jury. The Court also concludes that a person of ordinary skill in the art as of the effective date would understand "outer" in the context of the '973 patent to mean "external."

Accordingly, the Court construes the "main body portion having a curved outer profile" as the "the principal or primary portion having an external outline in which the upper and lower boundaries deviate from a straight line without sharp corners or sharp angles."

### 2.    "Cheek Retractor Portion Having a Curved, Fish-tail Shaped Outer Profile"

Plaintiff proposes that "the cheek retractor portion having a curved, fish-tail shaped outer profile" be construed as: "the cheek retractor portion having an external outline in which the upper and lower boundaries deviate from a straight line without sharp corners or sharp angles and flare or fan out as in the form of a fish-tail." Opening Br. at 12. Defendant Zirc does not dispute the meaning of "cheek retractor portion" and argues the term "curved" is notoriously well known and not in dispute, and thus, the only the phrase "fish-tail shaped outer profile" needs construction. Zirc Responsive Br. at 3. Defendant Zirc's proposes that "curved, fish-tail shaped" be construed as "fish tail." The Black Defendants argue the disputed term is fatally ambiguous and therefore indefinite. Black Defendants Br. at 21. Alternatively, the Black Defendants propose the term be construed as "outer surface with a convex, fish-tail shape."

The Court again "begins with the claim language itself." *Phillips*, 415 F.3d at 1312–13. The relevant portion of Claim 1 including the disputed term (the same language also appears in Claims 14 and 27) reads as follows:

> An intraoral device, comprising: a tongue and cheek retractor, the tongue and cheek retractor comprising, a main body portion and a cheek retractor portion . . . *the check retractor portion having a curved, fish-tail shaped outer profile* and being configured to isolate an area of interest of a person's mouth by retracting the cheek tissue during use; and protect adjacent cheek tissue during use . . . .

Opening Br. Ex. A at Col. 15:34–55 (emphasis added). In constructing the previous disputed term, the Court construed the terms "curved," "outer," and "profile," which also appear here. "[U]nless it is clear from the specification and prosecution history," the Court will apply a

"presumption that the same terms appearing in different portions of the claims should be given the same meaning." *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1366 (Fed. Cir. 2007) (quoting *Fin Control Sys. Pty., Ltd. v. OAM, Inc.,* 265 F.3d 1311, 1318 (Fed. Cir. 2001)) (internal quotation marks omitted); *see also Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) ("[A] claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent."); *Phillips*, 415 F.3d at 1314 ("Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims."). Because the specification and prosecution history do not clearly provide otherwise, the Court will construe the same terms – in this instance "curved," "outer," and "profile," – to have the same meaning throughout the patent.

The Court next turns to the phrase "fish-tail shaped." Plaintiff contends the '973 patent's specification and prosecution history contain no definition of this phrase. Opening Br. at 8. All the parties agree "fish-tail" has no specialized meaning in the relevant art. *See id.*; Zirc Responsive Br. at 3; Black Responsive Br. at 19. However, the Black Defendants argue the term "fish-tail" is indefinite." Black Responsive Br. at 18. Defendant Zirc also seems appears to make this same argument in the alternative. *See* Zirc Responsive Br. at 4. Before construing the disputed term, the Court will address Defendants' indefiniteness arguments.

Specifically, Defendants argue the term "fish-tail" fails to provide any objective criteria for one of skill in the art to understand whether an object qualifies or not. Black Responsive Br. at 18; Zirc Responsive Br. at 4. Under the Supreme Court's decision in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014), "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Id.* at 2124. The Court finds Defendants have failed to establish the term "fish tail" is indefinite by clear and convincing evidence. *See Warsaw Orthopedic Inc. v. Nuvasive, Inc.*, 778 F.3d 1365, 1370–71 (Fed. Cir. 2015). Neither Defendant Zirc nor the Black Defendants have provided expert testimony regarding "how a person of ordinary skill would not be reasonably certain

about the scope of this claim term." *FlatWorld Interactives LLC v. Samsung Electronics Co.*, No. CV 12-804-LPS, 2014 WL 7464143, at *12 (D. Del. Dec. 31, 2014). Rather, the Black Defendants appear to argue that "fish-tail" could have various definitions and is therefore indefinite. *See* Black Responsive Br. at 18–20. Pointing to *Nautilus*, Defendant Zirc merely states that "[a] patent must be precise enough to afford *clear* notice of what is claimed." Zirc Responsive Br. at 4. Indeed, a claim "is indefinite if its language 'might mean several different things.'" *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1371 (Fed. Cir. 2015) (quoting *Nautilus*, 134 S. Ct. at 2130 n.8). However, this is only the case were "no informed and confident choice is available among the contending definitions." *Id.* (quoting *Nautilus*, 134 S. Ct. at 2130 n.8). The Court is not persuaded there is no informed and confident choice among the contending definitions.

The Court therefore turns to the proper construction of "fish-tail shaped." As discussed above, the Court reads the disputed term in the context of the entire claim and the specification, and declines to construe "fish-tail shaped" from the top-down perspective. In addition, the preferred embodiments disclosed in the specification support construing "fish-tail shaped" as "flare out as in the form of a fish-tail." Language contained in the specification, which states the "retractor 240 includes an incurved main body portion 280 and a *forwardly angled* cheek retractor (or 'whale tail') portion 290 joined by *isthmus portion* 300," also supports this construction. Opening Br. Ex. A at Col. 11:41–44 (emphasis added).

Accordingly, the Court construes "the cheek retractor portion having a curved, fish-tail shaped outer profile" as "the cheek retractor portion having an external outline in which the upper and lower boundaries deviate from a straight line without sharp corners or sharp angles and flare out as in the form of a fish-tail."

### B. Disputed Claim Constructions in the '627 and '308 Patents

#### 1.   "Closed Body" in the '627 Patent

Plaintiff proposes that "closed body" be construed as "main part with a partially enclosed area." Opening Br. at 15. Defendant Zirc proposes this term should be read as "to surround on all sides." Independent Claim 1 of the '627 patent provides in relevant part:

A disposable, one-piece intraoral device, comprising:

*a closed body* having a first wall . . . and a second wall, the first and second walls of the closed body having an outer surface and an inner surface, the inner surfaces of the first and second walls defining a vertically and horizontally extending thin interior cavity, evacuation holes extending from the outer surface to the interior cavity of the closed body, the closed body including … a cheek retractor portion to retract a cheek of a user, . . ., and the lower portion including a tongue retractor portion to retract a tongue of a user . . . .

Opening Br. Ex. B at Col. 10: 13–30 (emphasis added).

To determine the ordinary meaning and customary meaning of "closed body," the Court must consider "the context of the surrounding words of the claim." *Brookhill-Wilk 1, LLC*, 334 F.3d at 129l; *see also Phillips*, 415 F.3d at 1314 ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms."). In addition, it is "entirely proper to consider the functions of an invention in seeking to determine the meaning of particular claim language." *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1376 (Fed. Cir. 2009) (quoting *Medrad, Inc.*, 401 F.3d at 1319) (internal quotation marks omitted). Reading the disputed term in context reveals that the language of the claim itself helps define the properties of the "closed body." The "closed body" has a first wall and a second wall, a central portion, opposite side portions, an upper portion, and a lower portion, for instance. In addition, there are "evacuation holes extending from the outer surface to the interior cavity of the closed body." Opening Br. Ex. B at Col 10:19–20. In other words, the language of the claim indicates the closed body actually has holes. And, these holes are necessary for the fluid evacuation function to work. *Id.* at 15.

Embodiments disclosed in the '627 patent's specification also speak to the evacuation function. For instance, the specification states: "The fluid evacuation system 34 is comprised of the aforementioned evacuation channels and holes located in fluid evacuation members such as the tongue and cheek retractor 22, dispersion piece 24, and bite block 26. . . . For example, as illustrated in FIGS. 8A and 8B, fluid is drawn from the tongue area through the evacuation

holes 60 and evacuation channels 58 in the tongue retractor portion 56." Opening Br. Ex. B at Col. 7:7–16. Therefore, in construing the claim term, the Court takes into account the language of the claim (which indicates the closed body has evacuation holes) and a fundamental aspect of the device's function (to evacuate fluid and debris). *See Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1324 (Fed. Cir. 2008) ("The claims of the patent must be read in light of the specification's consistent emphasis on this fundamental feature of the invention.").[5]

Defendant Zirc argues that construing "closed body" to indicate the presence of evacuation holes changes the meaning of the term "closed" to "open," suggesting that construing the claim term in context and in light of the specification is improper. Zirc Responsive Br. at 5. This is incorrect; rather, as the Federal Circuit has emphasized, the person of ordinary skill in the art is deemed to read the claim term both in the context of the particular claim in which it appears and in the context of entire patent, including the specification. *Phillips*, 415 F.3d at 1313; *see also ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003); *Brookhill-Wilk 1, LLC*, 334 F.3d at 1299. The Court agrees with Defendant that the construction should convey "the concept that the closed body is enclosing a three dimensional volume." Zirc Responsive Br. at 5. However, in proposing the construction "to surround on all sides," Defendant Zirc does not adequately take into account the meaning of the word "body" in this context and the presence of evacuation holes in the closed body. With respect to the term "body," the Court finds the construction of "body" as "main part" in *Intex Recreation Corp. v. Team Worldwide Corp.*, 42 F. Supp. 3d 80 (D.D.C. 2013), persuasive. *Id.* at 100. Further, the Court concludes that "closed" cannot mean fully closed; such a construction ignores the language of the claim and improperly excludes the preferred embodiments disclosed in the specification.

Accordingly, the Court finds that the ordinary and customary meaning of "closed body" as understood by a person of ordinary skill in the art as of the effective date of the invention in

---

[5] The Court disagrees with Defendant Zirc that reading the claim term in light of the claim's language and the device's function entails redrafting claims to cure a drafting error.

the context of Claim 1 of the '627 patent and its specification, is "main part with a partially enclosed area."

### 2.    "Translucent Material" in the ' 627 and '308 Patents

Plaintiff argues the construction of "translucent material" should be "partially light-transmissive material." Defendant Zirc proposes the Court construe the claim term as "substantially light-transmissive material." The parties therefore only dispute whether "partially" or "substantially." should precede the phrase "light-transmissive material." In other words, the parties dispute how translucent the "light-transmissive material" is.

Zirc asserts the prosecution history and specification offer guidance. Zirc Responsive Br. at 5. Zirc emphasizes that fifteen of the seventeen figures appearing in each patent include either the word "illumination" or "light," notes the Abstract of each patent states that "the present invention is an intraoral illumination device," and points out that the Field of Invention states the invention "relates" to "dental appliances for illuminating the mouth of a dental patient." *Id.* (citations and internal quotation marks omitted). Zirc also highlights the Detailed Description states the invention results in "flooding of the patient's mouth with light." *Id.* The Court agrees that the language in the specification pointing to the illumination function of the intraoral advice is relevant. However, the asserted claims themselves do not mention illumination. The Court must avoid improperly importing limitations from the specification into the claims, which is what Zirc's argument implies. *See Phillips*, 415 F.3d at 1323; *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The claims, not specification embodiments, define the scope of patent protection. The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims.").

Finally, Zirc turns to the prosecution history, and submits that the word "substantially" was inadvertently omitted from the claim term. Zirc Responsive Br. at 6. The USPTO Patent Examiner rejected Claim 22, which claimed a "substantially translucent material," because of errors in lines 6–9. *Id.* The word "substantially" was not in those lines meaning it was not intended for correction. *Id.* The amended claim was subsequently allowed and no appears in the

‘627 patent as Claim 1. *Id.* According to Zirc, "substantially" must have been removed inadvertently. *Id.* Zirc appears to base this inadvertence argument purely on conjecture. Further, Zirc provides no support for its contention that "[t]he underlying function of 'flooding the patient's mouth with light,' which is manifest throughout the specification of each asserted patent, cannot be performed unless the translucent material is a 'substantially light transmissive material.'" *Id.* Moreover, the doctrine of claim differentiation provides that, "the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1275 (Fed. Cir. 2012) (citation and internal quotation marks omitted). Unlike Claim 1 of the ‘627 and ‘308 patents, which use the claim term "translucent material," Opening Br. Ex. B at Col. 10:14–15; *Id.* Ex. C. at Col: 14–15, dependent Claim 4 of the patents uses the claim term "*substantially* translucent material," *id.* Col. 10:49–50; *id.* Col. 10:42–43.[6] Dependent Claim 4 thus limits "translucent" to "substantially translucent," raising the presumption that that limitation is not found in Claim 1. Defendant fails to rebut this presumption. *See Medrad, Inc.*, 358 F.3d at 910 ("[W]here the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest."). Accordingly, the Court declines to adopt Defendant's proposed construction.

The absence of the word "substantially" in Claim 1 also suggests the "translucent material" referenced in that claim is a material with a level of translucency that is something less than the "substantially translucent material" in Claim 4. The question is whether Plaintiff's construction correctly captures the degree of translucency.

---

[6] Claim 4 of the ’627 patent states: "[t]he intraoral device of claim 1, wherein the body is formed from *substantially* translucent material," Opening Br. Ex. B at Col. 10:49–50. (emphasis added). Claim 4 of the ‘308 patent reads: "The intraoral device at claim 1, wherein the body comprises a *substantially* translucent material." *Id.* Ex. C at Col. 10:42–43 (emphasis added).

1  Plaintiff, noting the rule that other court's interpretations of disputed terms may be

2  persuasive, points to a Northern District of Texas court's explanation of translucent material.

3  Opening Br. at 16. In that case, the disputed term was "an at least partially light-transmissive

4  diffuser." *Richmond v. Forever Gifts, Inc.*, No. 3:14-CV-0583-K, 2015 WL 3421370, at *4

5  (N.D. Tex. May 27, 2015). The court explained that, "[a] translucent material is by its nature

6  one that allows some but not all light to travel through the material, i.e. a partially light-

7  transmissive material." *Id.* at *6. Given the *Richmond* court's discussion, the Court is persuaded

8  it should adopt the word "partially" here, and construe "translucent material" as "partially light-

9  transmissive material."

10          **3.      "Thin Interior Cavity," "Interior Cavity," and "The Outer Surface to**

11                  **the Interior Cavity" in the '627 and '308 Patents**

12                  **a.  "Thin Interior Cavity"**

13  Plaintiff proposes the Court construe "thin interior cavity" as "thin inner open space."

14  Opening Br. at 17. Defendant Zirc argues these terms need no construction. Zirc Responsive

15  Br. at 6. In other words, both parties agree the word "thin" is manifest. The Court agrees with

16  both parties that the "ordinary and plain meaning of 'thin' is manifest" and therefore the word

17  "thin" requires no construction. *See Ultradent Products, Inc. v. Hayman*, No. CV-00-13402

18  MRP(CTX), 2002 WL 34477127, at *14 (C.D. Cal. Jan. 11, 2002).

19          Although Plaintiff agrees "thin" needs no construction, it proposes a construction for

20  "interior cavity." Opening Br. at 17. Plaintiff points to the context of the asserted claims of the

21  '627 and '308 patents and specifications, explaining that "thin interior cavity" is defined by

22  "the inner surfaces of the first and second walls" and "is a structure that plays a vital role in the

23  key function of fluid evacuation." *Id.*

24          The Court concludes the ordinary and plain meaning of the word "interior" is manifest

25  and needs no construction. However, the Court finds another court's construction of "cavity"

26  persuasive here. In *Nike, Inc. v. Adidas Am. Inc.*, No. 9:06-CV-43, 2006 WL 3751181 (E.D.

27  Tex. Dec. 18, 2006), the court concluded "cavity" means "an open space." *Id.* at *8.

28

Accordingly, the Court construes the claim term "thin interior cavity" as meaning: "thin interior open space."

### b. "The Outer Surface to the Interior Cavity" and "Interior Cavity"

In context, the next disputed terms in Claim 1 are: "evacuation holes extending from *the outer surface to the interior cavity* of the closed body." Opening Br. Ex. B at Col. 10:19–20 (emphasis added); *see also id.* Ex. C at Col:19–20. Plaintiff proposes that "the outer surface to the interior cavity" be construed as "the outer surface of the first and/or second wall to the thin inner open space." Opening Br. at 18. Defendant submits that the terms "interior cavity" and "outer surface" require no construction. Zirc Responsive Br. at 6.

When the term "the interior cavity" appears subsequent to "thin interior cavity" in Claim 1 of the '627 patent, "thin interior cavity" provides the antecedent basis. *See Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370–71 (Fed. Cir. 2006). However, particularly because the term "the interior cavity" appears only a few phrases after its antecedent basis, the Court finds it unnecessary to construe "the interior cavity" as "*thin* interior cavity." The Court also concludes the term "the outer surface to the interior cavity" in the '627 patent refers back to "the first and second walls of the closed body having an *outer surface*." *See* Opening Br. Ex. B at Col. 10:15–16. However, the Court finds the phrase "of the first and/or second wall" does not need to be appended to "the outer surface" to make the antecedent basis clear to a jury. Accordingly, consistent with the antecedent term, the Court construes "the outer surface to the interior cavity" as "the outer surface to the interior open space."

### 4. "Central Portion" in the '627 Patent

Plaintiff proposes the proper construction of "central portion" is "portion at, in, or near the center." Opening Br. at 18. Defendant argues the words "central" and "portion" are notoriously well known and need no construction. Zirc Responsive Br. at 7. The parties therefore agree the word "portion" needs no construction; the disputed term is "central."

As set forth above, claim terms are generally given their ordinary and customary meaning. *Phillips*, 415 F.3d at 1312. There are two exceptions to the general rule that claim terms are given their ordinary meaning: "1) when the patentee sets out a definition and acts as

his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Tom Tom, Inc. v. Adolph*, 790 F.3d 1315, 1327 (Fed. Cir. 2015) (quoting *Golden Bridge Tech. v. Apple, Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014)) (internal quotation marks omitted). It does not appear that either exception applies here. And, neither the specification history nor the prosecution history discusses the disputed term. The Court therefore turns to extrinsic evidence. American Heritage Dictionary defines "central" in various ways, including as "[s]ituated at, in, or near the center." Brunski Decl. ¶ 55, Ex. 2 at 69. Similarly, Webster's II's definition of central includes "[a]t, in, near or being the center." *Id.* ¶ 55, Ex 3 at 83. These definitions accord with the ordinary meaning of the term. Accordingly, the Court construes "central portion" as "portion at, in, or near the center."

### 5.  "Extending Laterally From" and "Opposite Side Portions Extending Laterally From" in the '627 and '308 Patents

Plaintiff argues that the correct construction of "extending laterally from" is "extending from the side of," and that the correct construction of "opposite side portions extending laterally from" is "side portions extending from opposite sides of." Opening Br. at 19. Plaintiff's proposed construction for "opposite side portions extending laterally from" is "side portions extending from opposite sides of." Defendant Zirc argues no construction is necessary and the terms "should be given their plain meaning." Zirc Responsive Br. at 7–8.

These disputed terms appear in Claim 1 of the '627 patent as follows:

> the closed body including a central portion, *opposite side portions extending laterally from* the central portion . . .
>
> . . .
>
> a bitable portion *extending laterally from* the side portion of the closed body opposite the cheek retractor portion . . .
>
> . . .
>
> a connector portion *extending laterally* from the bitable portion . . . .

Opening Br. Ex. B. at Col. 10:21–23, 31–32, 35–36 (emphasis added); *see also id.* Ex. C. at Col: 10:10:21–23, 31–32, 35–36. The terms "extending," "laterally," and "opposite

side portions" do not appear in the specification of the asserted patents. The prosecution history also does not discuss those terms.

However, the preferred embodiments disclosed in the patents' specifications are potentially relevant here. The disputed term "opposite side portions extending laterally from" first appears in the claims in this context: "*opposite side portions extending laterally from* the central portion." Opening Br. Ex. B at Col. 10:22–23 (emphasis added); *id.* Ex. C. at Col. 10:22–23. The language of the claim does not refer to a particular point of origin on the central portion. However, Plaintiff's proposed construction indicates particular points of origin: "side portions extending *from opposite sides of* the central portion." The preferred embodiment in the '627 patent illustrates this construction. However, the Court may not read the limitations from the embodiments into the claim, which is what Plaintiff's proposed constructions suggest. *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) ("While we read claims in view of the specification, of which they are a part, we do not read limitations from the embodiments in the specification into the claims."); *see also Callicrate*, 427 F.3d at 1368.

Further, to support its proposed constructions, Plaintiff primarily relies on another court's construction of the term and on dictionary definitions. In *American Permahedge, Inc. v. Barcana, Inc.*, 105 F.3d 1441 (Fed. Cir. 1997), the Federal Circuit construed "extending laterally" as "extending from the side, with no limitations on angle." *Id.* at 1445; *see* Opening Br. at 19. However, as Defendant points out, the Federal Circuit noted the plain meaning of "extending laterally" is also "extending sideways." *Id.* at 1444; *see* Zirc Responsive Br. at 7. The dictionary definitions Plaintiff cites do not indicate that "lateral" must mean extending *from the side of.*[7] And, as indicated above, the Court cannot limit the scope of the claims to what is disclosed. Accordingly, the Court concludes the ordinary and plain meaning of these

---

[7] For instance, the American Heritage Dictionary's first definition of "lateral" is "[o]f, relating to, or situated at or on the side of." Brunski Decl. ¶ 57, Ex. 2 at 71. Similarly, Webster's II's first definition of "lateral" is "[o]f, pertaining to, or located at the side." *Id.* ¶ 57, Ex. 3 at 86.

disputed terms is manifest and that the terms "extending laterally from" and "opposite side portions extending laterally from" require no construction.

### 6.   "Adapted to Extend" in the '627 and '308 Patents

Plaintiff proposes that "adapted to extend" be construed as "capable of extending with or without a separate or removable part." Opening Br. 20. Defendant Zirc asserts the appropriate claim construction is "made suitable to extend." Zirc Responsive Br. at 8.

In the '627 patent, the disputed term appears in Claim 1 as follows: "a connector portion extending laterally from the bitable portion and *adapted to extend* outside of a user's mouth to connect with a vacuum source." Opening Br. Ex B at Col 10:35–37 (emphasis added).[8] Plaintiff asserts the intrinsic evidence does not define "adapted to extend," and that the disputed term does not have a specialized meaning in the art. *Id.* at 19. Defendants do not point to any intrinsic evidence either. Therefore, the Court turns to extrinsic evidence. Plaintiff bases its proposed construction on previous courts' constructions. For instance, Plaintiff notes that the court in *SignalQuest, Inc. v. Chou*, No. 11-CV-392-JL, 2015 WL 471008 (D.N.H. Feb. 4, 2015) construed "adapted to be mounted" as "capable of mounting," and ruled that "a separate and removable item" may accomplish the "mounting." *Id.* at *3–4; *see* Opening Br. at 19. For its construction, Defendant Zirc relies on the *Ultradent Products* court's construction. In that case, the court concluded that "adapted to be delivered by a syringe" means "made suitable for delivery by a syringe." *Ultradent Products*, 2002 WL 34477127, at *13. The Court concludes the dictionary definitions Plaintiff points to actually support Defendant Zirc's proposed construction. *See* Opening Br. at 20 n.25. For instance, the American Heritage Dictionary defines "adapted to" as "[t]o make suitable or fit for a specific use or situation." *Id.*; Brunski Decl. ¶ 59, Ex. 14 at 158.

---

[8] In the '308 patent the claim language is: "a connector portion extending laterally from the side portion of the body opposite the cheek retractor portion and *adapted to extend* outside of user's mouth to connect with a vacuum source . . . ." Opening Br. Ex. C at Col. 10:27–30 (emphasis added).

In addition, citing expert testimony but providing no additional explanation, Plaintiff's construction includes the phrase "with or without a separate removable part." Opening Br. at 20. Although this elaborate construction may be consistent with some of the disclosed embodiments in the '627 and '308 patents' specifications, the Court finds this language goes beyond the plain and ordinary meaning of the term. Accordingly, the Court construes "adapted to extend" as "made suitable to extend."

### 7.    "Thin Body" in the '308 Patent

Plaintiff proposes the Court construe "thin body" as "thin main part." Opening Br. at 20. Defendant Zirc asserts no construction is needed for the term. Zirc Responsive Br. at 8. As discussed above, the Court finds the ordinary and plain meaning of "thin" is manifest and "thin" needs no construction. *See Ultradent Products*, 2002 WL 34477127, at *14. The Court finds that the ordinary and customary meaning of the term "body" is "the main or central part." *See Intex Recreation Corp.*, 42 F. Supp. 3d at 100. Accordingly, the Court construes "thin body" in the '308 patent as "thin main part."

### 8.    "Refract" and "Wail" in the '308 Patent

The '308 patent's independent Claim 7, column 10, line 61, reads: "a cheek retractor portion to *refract* a cheek of a user." (emphasis added). Plaintiff asserts this is a typographical error and the word "refract" should be construed as "retract." Opening Br. at 21. Defendant Zirc agrees with this construction. Zirc Responsive Br. at 8.

Similarly, the '308 patent's independent Claim 8, column 11, line 91 reads: "having a first *wail* . . . a second wall." (emphasis added). Plaintiff argues this is also a typological error and the word "wail" should be construed as "wall." Defendant Zirc also agrees with this construction.

A district court can correct obvious minor typographical errors. *See Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003). Given the claim language surrounding the terms "refract" and "wail," and the parties agreement, the Court construes the term "refract" as "retract" and the term "wail" as "wall." *See id.* ("A district court can correct a patent only if (1) the correction is not subject to reasonable debate based on consideration of the

claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claim.).

## IV.   Disposition

For the reasons explained above, the Court construes the disputed terms in the following ways:

- The term "main body portion having a curved outer profile," contained in the '973 patent, is construed as the "the principal or primary portion having an external outline in which the upper and lower boundaries deviate from a straight line without sharp corners or sharp angles."
- The term "the cheek retractor portion having a curved, fish-tail shaped outer profile," contained in the '973 patent, is construed as "the cheek retractor portion having an external outline in which the upper and lower boundaries deviate from a straight line without sharp corners or sharp angles and flare out as in the form of a fish-tail."
- The term "closed body," contained in the '627 patent, is construed as "main part with a partially enclosed area."
- The term "translucent material," contained in the '627 and '308 patents, is construed as "partially light-transmissive material."
- The term "thin interior cavity," contained in the '627 and '308 patents, is construed as "thin interior open space."
- The term "the outer surface to the interior cavity," contained in the '627 patent, is construed as "the outer surface to the interior open space."
- The term "central portion," contained in the '627 patent, is construed as "portion at, in, or near the center."
- The Court finds that the terms "extending laterally from" and "opposite side portions extending laterally from," contained in the '627 and '308 patents require no construction.
- The term "adapted to extend," contained in the '627 and '308 patents, is construed as "made suitable to extend."
- The term "thin body," contained in the '308 patent, is construed as "thin main part."
- The term "refract," contained in the '308 patent, is construed as "retract."
- The term "wail," contained in the '308 patent, is construed as "wall."

_David O. Carter_

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

Dated:  November 18, 2015